Romesberg *v.* Caplan Iron and Steel Company,
Appellant.

Argued October 4, 1957. Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Nathaniel A. Barbera,* with him *Paul J. Abraham*
and *Shaver, Heckman & Barbera,* for appellant.

*Leland W. Walker,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 11,
1957:

The Caplan Iron and Steel Company, the defendant in this case, committed an error as distinguished in bizarreness as it was inexcusable in law. It went on to land it did not own and with torches, wrecking bars, cutting instruments and other aggressive devices proceeded to destroy a three-story steel building it did not own. Robert and Thelma Romesberg, owners of the building, sued Caplan.

The Caplan company replied that it had only made a mistake, and explained that it had purchased a piece of land which contained a structure which the vendors had represented to be their own, and, since Caplan did not want the structure, it started out to dismantle it.

In their complaint the plaintiffs described the steel building as a quarrying plant and stone crusher which was in good operating condition. The defendant company, now being charged with having reduced the building to ruins, saw it through different eyes and described the building as an old, dilapidated affair in such a state of disrepair that it constituted a menace to the public. Caplan said in effect that it performed an act of generous general welfare in seeking to eradicate this junk piece from the face of the earth.

The controversy came on for trial before Judge LANSBERRY of Somerset County, sitting without a jury. Some 500 printed pages of testimony were taken, the plaintiffs specifying that their total losses amounted to $37,338.07. Caplan pleaded freedom from liability since it had entered upon the plaintiffs' property innocently and had ceased its dismantling operation when notified of the plaintiffs' claim of title.

Judge LANSBERRY entered judgment in favor of the plaintiffs in the sum of $15,850. Caplan appealed to this Court, which reversed and sent the case back to the Trial Court for an ascertainment of the "cost of

restoration of the structure to its condition immediately before the demolition began."*

The Trial Court took further testimony and again decided for the plaintiffs, this time in the amount of $12,200. Caplan has once more appealed, repeating much of the argument it had pressed upon the first appeal, namely, that the plaintiffs' plant had been abandoned for many years, that it had been sacked, mutilated, defaced, and damaged by thieves and vandals, as well as by the greatest pillager of all—time. Thus the plant had no value but if it did, the plaintiffs could not recover because it would be impossible to determine just what that value was.

There are many abstract things in life whose value cannot be estimated because they are beyond pecuniary measurement. Among those priceless abstractions (which in some ways are more tangible than terrestrial objects) are love, affection, devotion, and fidelity. But once man legally comes into possession of any item in the mineral, vegetable, or animal world, he acquires a commodity which cannot be taken from him without compensation. The value of that commodity can always be ascertained because there are ways of determining how much it will cost to restore or reproduce it in the event it is damaged or lost. The proofs may be faulty, the calculations defective, the expert opinions vacillating, but, when presented to a trained, experienced, and conscientious judge, they will be weighed in the scales of reliability and credibility, and the answer will be written on the parchment of truth with a reasonable assurance of substantial accuracy. It would be a melancholy state of affairs indeed if a trespasser could destroy his neighbor's property and then

---

* Reporter's Note: *Romesberg v. Caplan Iron and Steel Co.*, 385 Pa. 36, 39.

escape liability on the theory that the damage is incapable of financial appraisement.

Anything which is capable of manual production is capable of physical circulation and anything which becomes a subject of commerce becomes an object of monetary evaluation.

The record in this case (of both trials) reveals the most comprehensive inquiry imaginable into the value of the plaintiffs' plant before the demolition began and the value of the plant after its invasion by Caplan. The witness stand was occupied by engineers, bank directors, mill superintendents, business men, public officials, workingmen, contractors, railroad men, lawyers, surveyors, and brokers, all of whom contributed their share of knowledge on the issue before the Court, and it would be absurd to conclude that with the materials they presented it would be impossible for the Judge to build a reasonable and just verdict.

We find no error in the proceedings, no fault in the Trial Court's reasoning, and no misapplication of the law. Accordingly, the judgment entered in the court below is affirmed.