333 F.2d 561
 KINCAID & KING CONSTRUCTION COMPANY, Inc., a corporation, Appellant,
v.
The UNITED STATES of America, for the Use of William OLDAY, Continental Casualty Company, a corporation, and United States Fidelity & Guaranty Company, a corporation, Appellees.
 No. 18916.
 United States Court of Appeals Ninth Circuit.
 June 22, 1964.
 
 D. A. Burr, G. F. Boney, Theodore M. Pease, Jr., Burr, Boney & Pease, Anchorage, Alaska, for appellant.
 John E. Manders, Anchorage, Alaska, Lyle L. Iversen, Lycette, Diamond & Sylvester, Seattle, Wash., for appellee Continental Cas. Co.
 Before CHAMBERS, Chief Judge, and HAMLIN and KOELSCH, Circuit Judges.
 HAMLIN, Circuit Judge:
 
 
 1
 Appellant Kincaid & King Construction Company, Inc., is a prime contractor and appellee William Olday, d/b/a Olday Construction Company, is a subcontractor on government contract number DA-95-507-eng-792, awarded March 16, 1955. Appellee United States Fidelity & Guaranty Company is the surety of appellant under a payment bond executed pursuant to section 1 of the Miller Act, 49 Stat. 793 (1935), 40 U.S.C. § 270a(a) (2) (1958). Appellee Continental Casualty Company is the surety of Olday on an indemnity bond designed to protect appellant against losses caused by non-performance of the subcontract by Olday.
 
 
 2
 On October 29, 1956, the United States for the use of Olday brought this action on the Miller Act bond in the United States District Court for the District of Alaska against appellant, appellant's joint venturer Anchorage Builders, and their surety United States Fidelity & Guaranty Company. The complaint alleged that Olday was entitled to compensation for extra work done on the subcontract resulting from engineering errors and obstruction and delay of Olday's work by appellant and its joint venturer. On November 23, the defendants answered and counterclaimed (erroneously referred to in the record as a cross-complaint) for damages resulting from Olday's failure to perform the subcontract. On December 21, appellant brought a third-party complaint against Continental Casualty as surety on the indemnity bond for the same damages as alleged in the counterclaim. The action was tried without a jury and on October 23, 1958, the trial court rendered findings of fact and conclusions of law and awarded Olday the sum of $30,000 plus $2,000 attorneys' fees, awarded reimbursement against appellant to United States Fidelity & Guaranty for any amounts paid on the Miller Act bond to Olday, and dismissed the third-party complaint against Continental Casualty. Kincaid & King appealed to this court. On February 21, 1962, we dismissed the appeal for lack of jurisdiction on the ground that there was no final judgment within the meaning of 28 U.S.C. § 1291 (1958) because of the trial court's failure to dispose of the counterclaim.[1] On May 29, 1963, the trial court, pursuant to a further hearing, entered supplemental findings of fact and conclusions of law and dismissed appellant's counterclaim with prejudice. Kincaid & King has again appealed. This time, all issues having been resolved by the district court, jurisdiction is conferred upon this court by 28 U.S.C. § 1291 (1958).
 
 
 3
 We allowed the parties on this appeal to rely on the record and briefs previously filed properly supplemented with the additional record and such further briefs as were appropriate. The issues presented by these briefs are whether: (1) The findings of fact are clearly erroneous; (2) the trial court properly dismissed the counterclaim with prejudice; and (3) the trial court properly dismissed the third-party complaint against Continental Casualty with prejudice.
 
 I. Findings of Fact
 
 4
 The trial court decided, and it is not effectively controverted, that Olday was in fact injured; the amount, however, was unclear. While mere speculation and conjecture are not permitted, where the fact of damage is shown, the amount may be arrived at by consideration of the entire record and reasonable inferences may be drawn therefrom.[2] This is what the trial court did and, in the absence of clear documentary evidence as to amount, nothing better could have been done. While Olday was very shortsighted in not keeping proper records, he should not be deprived of all recovery because of this. As stated by the trial judge in his oral judgment of June 18, 1958, Olday probably would have received a much more substantial judgment if he had kept proper records. In this light, we shall consider the contention that the findings of fact as to damages are clearly erroneous.
 
 
 Finding of Fact X
 
 
 5
 The first contention is as to the award of $1,500.00 for removal of frost boils from the parking lot at the officers' open mess — government allowance 99 of modification No. 17. According to exhibit I, introduced by appellant, the government allowed $2,084.78 to appellant; of this $1,078.00 was credited to Olday by appellant according to exhibit O-1, also introduced by appellant. The court found the disparity of almost fifty per cent unreasonable, considering that the bulk of the work was performed by Olday, and accordingly allowed Olday $1,500.00 for the work.
 
 
 6
 The second contention is as to the award of $597.00 for removal of 250 yards of excess backfill material and reshaping and recompacting the west parking lot at building 975 — allowance 101 of modification No. 18. Exhibit I shows a government allowance of $597.00; exhibit O-1 shows appellant's credit to Olday of $250.00. Appellant's project manager, Mr. Smith, testified that Olday did all the work on this job and, no evidence being introduced to the contrary, the trial court decided that Olday should therefore receive credit for it.
 
 
 7
 The third contention is that Olday was not entitled to twenty per cent of allowance 106 of modification No. 18. This was in the amount of $36,980.36 according to exhibit I, and was allowed by the government as "payment in full for all claims and protests under subject contract pertaining to Excavation of Soft Spots, Delay Damage, Extra Asphalt, Sidewalk and Curb, Manholes and Valves, Prime Coat and Gravel Base." Olday's portion of the total contract was about twenty per cent and Olday admittedly did a substantial portion of the work involved in allowance 106. Appellant's contention that Olday had already been paid for this work is unsupported by the record.
 
 
 Finding of Fact XI
 
 
 8
 The trial judge awarded Olday the sum of $10,000.00 for delays caused by appellant's failure to stake properly the area to be worked and by appellant's putting in heater posts which obstructed the movement of Olday's machinery. Although there is little documentary evidence to show how much delay was caused, the fact that Olday was delayed is manifest. Olday performed a large amount of work on this contract, and the $10,000.00 awarded was a very small fraction of the $150,000.00 asked.
 
 
 Finding of Fact XII
 
 
 9
 The district court found that $5,000.00 of appellant's back charge to Olday for labor on compaction for curbs in 1956 was excessive and therefore disallowed the back charge. The chief reason given by the court for this finding is that at that time two-thirds of the work had already been done. This is not denied by appellants. The district court, on the same ground, found $8,000.00 of appellant's back charge for office services and interest excessive. We do not find any basis in appellant's claim that the court "ignored" the work which appellant did for Olday in keeping his payroll records.
 
 
 10
 On examining the record and exhibits, we conclude that the evidence, while not the best, is sufficient to support the findings as to damages. We cannot therefore hold that these findings are arbitrary, unreasonable, or clearly erroneous.
 
 II. The Counterclaim
 
 11
 Appellant contends that the trial court erred in dismissing the counterclaim against Olday. The court did so on the ground that Olday had substantially performed the contract and no evidence had been introduced to show that Olday had breached his subcontract. Appellant claims that evidence which it attempted to introduced was improperly excluded by the trial judge. In examining the record we find that appellant called several witnesses in its attempt to prove its counterclaim. After such witnesses were called appellant desired to introduce two exhibits — U and W. These were not admitted by the court. The record shows that these exhibits were not admissible under the business records rule. Business records are hearsay. The only basis on which they can be admitted is under 28 U.S.C. § 1732 (1958), which requires that they be made in the regular course of business and at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter. The counterclaim is alleged to have arisen in 1955 and 1956, whereas exhibits U and W were not prepared until after the work had been completed and the litigation begun. It is clear that these "records" were not made in the regular course of business nor were they made within a reasonable time after the event. The exhibits were properly excluded. The trial court found that appellant's other evidence of its counterclaim was "not reliable and is without merit." We hold that this finding is not clearly erroneous.
 
 III. The Third-Party Complaint
 
 12
 Likewise, the third-party complaint against Continental Casualty Company was properly dismissed. Since Continental's only connection with the case was as surety for Olday, a prerequisite to recovery against Continental would be proof that Olday had breached the sub-contract. The court did not find that Olday breached his contract. Instead he found that Olday "substantially performed his contract." Hence there could be no liability on the part of his surety.[3]
 
 
 13
 We find no reversible error on this record. Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 299 F.2d 787
 
 
 [2]
 Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931)
 
 
 [3]
 In the original briefs filed on the first appeal, but not on oral argument in this appeal, appellant raised issues as to the judgment on the indemnity bond in favor of United States Fidelity & Guaranty and as to the settlement between the two sureties on Olday's claim. We have examined these contentions and conclude that they are without merit